# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIE JAME STREATER, | ) |
| | ) No. 16 CV 10943 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) December 28, 2017 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Willie Streater seeks supplemental security income ("SSI") based on his claim that he has disabling back pain. After the Commissioner of the Social Security Administration denied his application, Streater filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, Streater's motion is denied and the government's is granted:

## Procedural History

Streater filed his application for SSI in January 2013, claiming a disability onset date of September 15, 2010. (Administrative Record ("A.R.") 126-31.) After his claim was denied initially and upon reconsideration, (id. at 66, 73), Streater sought and received a hearing before an Administrative Law Judge ("ALJ") which took place on March 24, 2015, (id. at 34-49). On June 17, 2015, the ALJ issued a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted as the named defendant.

decision concluding that Streater is not disabled and therefore not entitled to SSI. (Id. at 17-33.) When the Appeals Council denied Streater's request for review, (id. 1-7), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Streater filed this lawsuit seeking judicial review of the Commissioner's final decision, *see* 42 U.S.C. § 405(g); (R. 1), and the parties have consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 6).

## Background

Streater worked two hours per week as a self-employed auto mechanic from 1986 until 2009, after which he reported doing "clean up" work two hours a week through the date of his SSI application in 2013. (A.R. 163.) Streater asserts that beginning in September 2010, at the age of 48, he began suffering from back pain that prevented him from working on a full-time basis. During the March 2015 hearing, Streater presented medical and testimonial evidence in support of his claim.

### A. Medical Evidence

The medical record shows that Streater went to the emergency room in November 2012 complaining of back pain and left leg pain. (A.R. 340.) Records from that visit include x-ray results showing degenerative disc disease at L5-S1 and joint disease at L4-L5 and L5-S1 with suggested neuroforaminal stenosis. (Id. at 254.) An examination showed normal alignment in his back, normal patellar reflexes bilaterally, intact sensation in his lower extremities, normal strength in his

upper and lower extremities, and a negative straight-leg raise test bilaterally. (Id. at 346.) Streater's lumbar region was negative for obvious deformities, but there was tenderness to palpation of the left sacroiliac joint and pain with forward flexion and hip rotation to the right. (Id.) Streater was given pain medications, which he said helped alleviate his back pain. (Id.) He was also able to stand and walk with a normal gait. (Id.)

The following month in December 2012, Streater began seeing Dr. Muhammad Rafiq for routine primary care. (Id. at 248.) Streater complained of sometimes having lower back pain radiating to his left leg. (Id.) Dr. Rafiq noted that a physical examination of Streater's back showed it was within normal limits. (Id. at 249.) Dr. Rafiq prescribed ibuprofen and methocarbamol to treat Streater's pain and ordered an MRI, which was completed in January 2013. (Id. at 250, 256-57.) The MRI showed multilevel degenerative disc disease and degenerative facet arthropathy. (Id. at 256-57.)

In February 2013 state agency consultant Dr. Phillip Galle reviewed the MRI results along with Streater's other records and determined that Streater is still capable of performing light work because he had a normal musculoskeletal exam in December 2012. (Id. at 50-55.) In October 2013 Dr. Charles Wabner, another state agency consultant, affirmed Dr. Galle's initial assessment that Streater is capable of light work. (Id. at 57-64.)

Meanwhile, Streater went back to see Dr. Rafiq in March 2013 for a routine visit. (Id. at 290.) Upon examination Streater had a positive straight-leg raise test

3

in his right leg and complained of pain during a range-of-motion test. (Id. at 291.) Dr. Rafiq again prescribed ibuprofen and methocarbamol and gave Streater a handout with physical therapy exercises. (Id. to 293.) During subsequent visits in July and December 2013 and July 2014, Dr. Rafiq refilled Streater's medications and prescribed Tramadol and a back brace for his pain. (Id. at 285, 308, 310, 331.) A second MRI performed in June 2014 showed no significant interval changes from the first MRI taken in January 2013. (Id. at 357.)

Dr. Rafiq completed a questionnaire in December 2014 in which he opined that Streater can only sit for two to three hours and stand and/or walk for less than one hour in an eight-hour workday. (Id. at 328.) He also opined that Streater has to get up from a seated position every 20 minutes to move around and must return to a seated position after 5 minutes. (Id.) Dr. Rafiq noted that Streater's symptoms would be severe enough to frequently interfere with his attention and concentration throughout the workday, and that Streater would also need to take five- to ten-minute unscheduled breaks every one to two hours. (Id. at 329.) Finally, Dr. Rafiq determined that Streater would likely be absent from work more than three times a month because of his impairments, and that his symptoms go as far back as October 2010. (Id. at 330.) Dr. Rafiq wrote that his opinion was based on MRI findings, lumbar flexion of 80 degrees, a positive straight-leg raise test on the left, and 4/5 weakness in Streater's lower extremity. (See id. at 326.) In January 2015 Dr. Rafiq prescribed Streater a walking cane. (Id. at 317.)

## B. Streater's Hearing Testimony

Streater described his symptoms and medical treatment at the March 2015 hearing. He testified that he started having back pain about four years before the hearing and that it has gotten progressively worse since then. (A.R. 40, 43.) He said that he is in constant pain, has numbness in his left leg all the time, suffers from imbalance, and cannot sleep well. (Id. at 43, 45-46.) Streater also explained that he has been taking Tramadol and a muscle relaxer and wearing a back brace to address his pain. (Id. at 41.) He said that because of his medications he suffers from diarrhea, chronic nose bleeds, migraines, and stomach cramps. (Id. at 43.) According to Streater, with the help of a cane he can only walk for half a block. (Id. at 42.) Before he used a cane, he relied on walking sticks to ambulate. (Id. at 42-73.) He also testified that he might fall three or four times while walking half a block. (Id. at 46.) During the hearing, Streater alternated between sitting and standing. (See id. at 42, 47.) He said that he can only stand for 10 or 15 minutes and sit for 15 to 20 minutes. (Id. at 46-47.)

Streater also described his activities of daily living at the hearing. He said that he lives alone and uses public transportation to get around when a relative is not available to give him a ride. (Id. at 39.) He testified that taking public transportation is difficult because he is constantly moving and has to sit and stand intermittently. (See id.) He explained that he does not drive even though he has a driver's license because his medications make him dizzy and impaired. (Id. at 44.) As for personal care, Streater said that his family helps with household chores,

5

meal preparation, and grocery shopping. (Id. at 44-45.) Regarding his work history, Streater testified that he has had difficulty finding work because he has difficulty getting around and keeping appointments because of his back pain. (Id. at 48.)

**C.     The ALJ's Decision**

On June 17, 2015, the ALJ issued a decision denying Streater's claim for SSI. (A.R. 20-33.) In engaging the standard five-step sequence, *see* 20 C.F.R. § 416.920(a)(4), the ALJ determined at step one that Streater had not engaged in substantial gainful activity since his application date, (A.R. 22). At step two, the ALJ found that Streater's degenerative disc disease of the lumbar spine constitutes a severe impairment. (Id.) After concluding at step three that Streater's disc disease does not meet or medically equal the severity of any listed impairment, the ALJ determined that Streater has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). (Id. at 24.) Based on that RFC the ALJ determined at steps four and five that although Streater has no past relevant work, he is not disabled under the Medical Vocational Guidelines and accordingly, not entitled to SSI. (Id. at 24-25 (citing 20 C.F.R. Part 404, Subpart P, App. 2).)

**Analysis**

Streater argues that the ALJ erred when he afforded little weight to Dr. Rafiq's opinion and improperly evaluated Streater's symptoms. This court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as

6

adequate to support a conclusion." *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (internal quotation and citation omitted). This court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal may be required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## A.  Treating Physician

Streater argues that the ALJ should have accorded more weight to the opinion of Dr. Rafiq, his treating physician. Under the treating physician rule an ALJ must give controlling weight to a treating physician's opinion if it is: "(1) supported by medical findings; and (2) consistent with substantial evidence in the record."[2] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If the ALJ concludes that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for discounting the opinion, after considering the following factors:

> (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty.

*Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *see also* 20 C.F.R. § 416.927(c). As long as the ALJ articulates his reasons, he "may discount a treating physician's

---

[2] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because these new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable here. (Id.)

7

medical opinion if it is inconsistent" with the opinion of a consulting physician. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). But if the reasons the ALJ gives for discounting the limitations assessed by the treating doctor "are not supported by the record," then the "treating physician's opinion trumps the conclusions of agency consultants—in particular those who never examined the claimant." *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

Here the ALJ adequately explained that he gave only "little weight" to Dr. Rafiq's opinion because he found it "disproportional to the clinical and diagnostic findings, as well as his treatment[] notes." (A.R. 27.) For example, Dr. Rafiq opined that Streater could only sit for two or three hours and stand or walk for less than an hour in an eight-hour workday. (Id. at 328.) He also opined that Streater's symptoms would frequently interfere with his attention and concentration throughout the day, and that he would need to take unscheduled breaks every one to two hours. (Id. at 329.) However, the ALJ noted that multiple physical exams, including one performed by Dr. Rafiq in December 2012, were generally unremarkable. (Id. at 25-26.) The ALJ acknowledged that Streater had a positive straight-leg raise test in March 2013, but pointed out that few abnormalities were documented during subsequent visits. (Id. at 26.) In fact, Dr. Rafiq's notes show that Streater was negative for musculoskeletal symptoms in July 2013 and July 2014. (Id. at 285, 331.) Furthermore, the ALJ observed that although a January 2013 MRI showed degenerative disc disease and degenerative facet arthropathy, a June 2014 MRI showed no significant interval changes from

the first MRI. (See id. at 26 (citing id. at 357).) The ALJ considered that Dr. Rafiq prescribed Streater a back brace, but observed that no abnormalities or complaints were noted in the review of systems or physical examination from that visit. (See id. at 26 (citing id. at 331-33).) Moreover, the ALJ properly relied on the opinions of two state agency consultants who opined that Streater is capable of performing light work. (See id. at 27 (citing id. at 50-55, 57-64).)

Some of the ALJ's reasoning is questionable with respect to the opinion's "checklist" format and how Streater's activities purportedly contradict the opinion, which is discussed in further detail below. (See id. at 26.) However, the ALJ's decision to afford less weight to Dr. Rafiq's opinion is nonetheless sufficiently supported for the reasons described above. *See Shideler*, 688 F.3d at 310. Streater essentially contends that the ALJ should have weighed the evidence differently than he did, but it is not this court's role to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be weighed. *See Pepper*, 712 F.3d at 362. Accordingly, the court finds no basis for remand in the ALJ's analysis of Dr. Rafiq's opinion.

B.  **Symptom Evaluation**

Streater next argues that the ALJ committed reversible error in discounting his hearing testimony and finding his statements less than fully credible. This court gives an ALJ's assessment of the credibility of a claimant's statements "special deference," overturning that decision only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations

9

omitted). Those factors include, among others, the claimant's daily activities, factors that precipitate or aggravate symptoms, medications and their side effects, and other treatments or methods the claimant uses to relieve symptoms.[3] SSR 96-7p, 1996 WL 374186, at *3. This court's review of the ALJ's weighing of those factors "is extremely deferential," and the standard of review precludes the court from reweighing the facts underlying the ALJ's decision. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

Here the ALJ gave supported reasons to explain why he discounted Streater's statements regarding the severity of his symptoms. For example, the ALJ noted that Streater received routine and conservative treatment consisting only of medication. (A.R. 26.) Indeed, the record reflects that Streater's treatment mainly consisted of follow-up appointments a few times a year to refill medication. (See, e.g., id. at 285, 308, 310, 331.) The ALJ also found Streater's testimony that he can only walk a half block even when using a cane to be unsupported by findings of diagnostic tests and physical examinations. (Id. at 25.) The ALJ further observed that Streater worked part-time through the date of his application in 2013. (Id. at 26.) Although evidence of part-time work may not be "good evidence of ability to

---

[3] In 2016 the Social Security Administration updated its ruling on credibility to clarify that ALJs must focus on the "intensity and persistence" of a claimant's symptoms rather than the credibility of the claimant's character. *See* SSR 16-3p, 2016 WL 1020935, at *14167, *14169-70 (effective March 28, 2016); *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). However, the Social Security Administration recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p, 1996 WL 374186, governs cases like this one which were decided before that date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

engage in full-time employment," *Vanprooyen*, 864 F.3d at 571, it was nonetheless reasonable for the ALJ to consider Streater's work history in evaluating the severity of his alleged symptoms, *see Lott v. Colvin*, 541 Fed. Appx. 702, 706 (7th Cir. 2013). The ALJ acknowledged that Streater's work did not rise to the level of substantial gainful activity, but noted that the fact that his impairments "did not prevent [Streater] from working . . . strongly suggests that [they] would not currently prevent work." (A.R. 26.)

The ALJ's reliance on Streater's daily activities gives the court pause. The ALJ cited to Streater's two function reports as bases for finding that despite Streater's testimony, he "is able to drive a car, take public transportation, prepare[] simple meals and perform[] light household chores." (Id. (citing id. at 170, 198).) But Streater's two function reports were completed in February and August 2013, about two years before his hearing testimony. Streater testified at the hearing that his pain had gotten worse over the years, (id. at 43), and it is unclear whether the ALJ considered the progression of his symptoms between the time he completed the function reports and the time of the hearing. However, Streater testified that he took public transportation to the hearing, and although he testified it is difficult to do so, he said the difficulty stems from his "moving and twitching" rather than his walking limitations. (Id. at 39.) In any event, the Seventh Circuit has made clear that not all of the ALJ's reasons for disbelieving a claimant have to be valid "as long as enough of them are." *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) (emphasis in original); *see also Schreiber v. Colvin,* 519 Fed. Appx. 951, 961

(7th Cir. 2013) (noting that ALJ's credibility assessment can be imperfect but still not patently wrong); *Shideler*, 688 F.3d at 312 (upholding ALJ's credibility analysis even though that decision "was not perfect"). Accordingly, Streater has not shown that the ALJ committed reversible error in analyzing his testimony.

## Conclusion

For the foregoing reasons, the Streater's motion for summary judgment is denied, the government's is granted, and the final decision of the Commissioner is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**